1

2

3

4

5

6

7

8                  UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SHERRI LYNN MEADOWS,                    Case No.  1:21-cv-01136-BAM

12              Plaintiff,
                                             **ORDER GRANTING PLAINTIFF'S**
13         v.                                **MOTION FOR SUMMARY JUDGMENT**

14   LELAND DUDEK, Acting Commissioner       (Docs. 13, 17)
     of Social Security,[1]
15

16              Defendant.

17

18

19                            **INTRODUCTION**

20         Plaintiff Sherri Lynn Meadows ("Plaintiff") seeks judicial review of a final decision of the

21   Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance

22   Benefits and Supplemental Security Income under Title II and Title XVI of the Social Security Act.

23   The parties consented to magistrate jurisdiction and the case was authorized to proceed before the

24   undersigned for all further proceedings including trial and entry of judgment.  (Doc. 10.)  The

25   briefing on the motion was submitted, without oral argument, to Magistrate Judge Barbara A.

26

27   _____

     [1] Leland Dudek became the Acting Commissioner of Social Security in February 2025.  Pursuant to
28   Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek is substituted for Kilolo Kijakazi as
     Defendant in this suit.

                                         1

McAuliffe.  (Docs. 13, 17.)  Having considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence in the record and was not based upon proper legal standards.  Accordingly, this Court GRANTS Plaintiff's motion for summary judgment.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff applied for Title II Disability Insurance Benefits on February 20, 2019, alleging that she became disabled on January 1, 2019.  AR 213-214.[2]  Plaintiff applied for Title XVI Supplemental Security Income on March 13, 2019, alleging that she became disabled on December 10, 2018.  AR 215-224.  Plaintiff's applications were denied initially on June 14, 2019, and on reconsideration on August 21, 2019.  AR 126-30, 135-41.  Plaintiff requested a hearing before an administrative law judge ("ALJ") and ALJ Rebecca LaRiccia held a hearing on November 3, 2020.  AR 32-68.  ALJ LaRiccia issued an order denying benefits on the basis that Plaintiff was not disabled on November 25, 2020.  AR 10-31.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied.  AR 1-6.  This appeal followed.

### Medical Record

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

### The ALJ's Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 10-31.  Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2019.  AR 15.  The ALJ identified the following severe impairments: type I diabetes with diabetic gastroparesis, retinopathy, nephropathy and neuropathy; right shoulder adhesive capsulitis and rotator cuff tear; left shoulder impingement syndrome; cervical degenerative disc disease, post fusion surgery; fibromyalgia; obesity; plantar fasciitis.  AR 15.  The ALJ also noted the following non-severe

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

impairments: osteopenia; hypertension; and hypothyroidism.  The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments.  AR 18-19.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work except that Plaintiff could: frequently climb ramps and stairs; could occasionally climb ladders, ropes, or scaffolds; could frequently stoop, kneel, crouch, and occasionally crawl; would be unlimited in balancing; could occasionally reach overhead to the left; must avoid overhead reach on the right; had no limitations in handling, fingering, or feeling; must avoid exposure to unprotected heights and dangerous moving machinery; had a limited field of vision but was able to avoid ordinary hazards in the workplace; could work with both small and large objects; and must avoid night driving and low light conditions.  AR 19-20.  The ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as "medical opinion(s) and prior administrative medical finding(s)."  AR 20.

The ALJ found that Plaintiff could perform past relevant work as an outpatient receptionist (DOT No. 237.367-038, SVP4, sedentary as listed, performed between sedentary and light).  AR 25. The ALJ noted that such work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.  *Id.*  The ALJ therefore concluded that Plaintiff had not been disabled from the alleged onset date of January 1, 2019, through the date of the decision.  AR 26.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the

1    Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the

2    evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.,*

3    *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's

4    determination that the claimant is not disabled if the Commissioner applied the proper legal standards,

5    and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of*

6    *Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

7                                        **REVIEW**

8            In order to qualify for benefits, a claimant must establish that he or she is unable to engage in

9    substantial gainful activity due to a medically determinable physical or mental impairment which has

10   lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §

11   1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such

12   severity that he or she is not only unable to do his or her previous work, but cannot, considering his or

13   her age, education, and work experience, engage in any other kind of substantial gainful work which

14   exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The

15   burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.

16   1990).

17                                      **DISCUSSION**[3]

18           Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons for

19   discounting Plaintiff's subjective symptoms testimony.  (Doc. 13 at 7-17.)  Plaintiff further argues that

20   the ALJ erred by failing to properly evaluate or reject lay witness testimony.  (*Id.* at 17-22.)

21       **A.  Plaintiff's Subjective Complaints**

22           Plaintiff contends that the ALJ committed harmful error by failing to provide clear and

23   convincing reasons for rejecting Plaintiff's testimony.  (Doc. 13 at 7-17.)  In deciding whether to

24   admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis.  *Garrison v.*

25   *Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r*, 359 F.3d 1190, 1196 (9th Cir. 2004).

26

27   _____

     [3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including
28   arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific
     argument or brief is not to be construed that the Court did not consider the argument or brief.

                                            4

First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 21. However, the ALJ discounted Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms, noting that the statements were not consistent with medical evidence and other evidence in the record. *Id.* The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

First, the ALJ found that Plaintiff's allegations were not fully consistent with the medical and other evidence, and continued to summarize the medical evidence in the record. AR 20-23. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the ALJ summarized Plaintiff's allegations as follows:

> The claimant alleges in her Function Report that she has severe nausea and days that she cannot eat, drink, or go to work. The claimant states that her typical day includes checking her blood sugars, eating, and showering. The claimant stated that she can cook simple meals and that she tries to help out with simple household chores, like wiping down counters once a week. The claimant alleges she cannot fold laundry. The claimant stated that she can drive a car and shop in stores. The claimant stated that she also listens to music, watches television, and pets her dog during the day. She alleges difficulty with exertional and postural activities, alleging she can only walk half a block and that she needs to rest for five minutes after that (6E). Her testimony echoes this, as she alleges that she cannot work full time due to her diabetes and her nausea. She stated that she has trouble functioning when her blood sugars are low. She stated that she drinks apple juice when they are low. She stated that her medicines for her stomach issues do not help that much, but a change in diet has been somewhat helpful. The claimant also complained of a right shoulder issue and back issues. She stated past injections did not help. She stated that she also has plantar fasciitis. She stated that she uses pain medication for her shoulder and back issues and

5

that she also cannot do some housework due to her pain. She stated that she does not exercise. The claimant also stated she has left shoulder issues and had surgery in the past. She stated she cannot life [sic] more than five pounds and that she has trouble using her hands. The claimant said she last drove a few weeks prior to the hearing for a short distance.

AR 20-21. In contrasting Plaintiff's allegations with the medical evidence, the ALJ noted:

Regarding the claimant's stomach issues, her gastric emptying study in April 2017, revealed profound gastroparesis for solid phase gastric emptying (1F/13). In August, she stated ceasing her Reglan medication helped her symptoms and that she was doing well. She also reported Prilosec was helping her. It was also observed she had no symptoms, had normal gait and no other remarkable signs (1F/17). However, later she complained of recurring symptoms of nausea and vomiting in November 2017, where she stated her symptoms had been controlled with medication until a flare of her gastroparesis. She stated her vomiting was mildly controlled with Zofran. She was treated at the emergency room with medication and electrolytes (4F/34). In February 2018, the claimant complained of diarrhea the past five days along with vomiting. She also complained of moderate abdominal (4F/19). Her gastrointestinal complaints appear to fade after this.

Also, her records and revealed that she had type I diabetes complicated by neuropathy, nephropathy, and retinopathy. It was noted her controls remained sub-optimal in April 2018. She also was noted to use an insulin pump and it was recommended her metformin be increased to address her symptoms (3F/8). The claimant stated that she tests her sugars three to four times per day and stated she was in the process of getting a new insulin pump. She denied gastrointestinal complaints or headaches. She reported taking one dose of Metformin per day (3F/8). In July, the claimant complained of some swelling in her lower extremities, worse at the end of the day. She complained of nausea with two Metformin, so was only taking one per day (3F/60). In August, she underwent a diabetic eye exam which revealed the claimant uses glasses and her exam revealed no acute abnormalities (3F/85). Her October appointment revealed her new insulin pump was working well and she stated her sugars were running high most of the time. She alleged a lot of stresses that aggravate her glycemic control and also denied any foot issues. She was encouraged to watch diet and exercise (3F/112). Her exam in January 2019, revealed intact sensation to monofilament along with an unremarkable foot exam (3F/133).

Regarding her musculoskeletal pain, the claimant had some left shoulder pain complaints in April 2018 (3F/8). She demonstrated a normal range of motion in her back and extremities (4F/22). In May, she complained of right shoulder pain and alleged the pain was primarily in the anterior

shoulder. She also alleged lifting activities and reaching aggravated the pain, however, she had not undergone any physical therapy or injections. Her right shoulder exam revealed some tenderness to palpation along with slightly diminished range of motion. Her strength was normal, however. Her MRI revealed a low grade partial thickness bursal-sided tear of the supraspinatus. She appeared to have adhesive capsulitis that should be treated with physical therapy. She underwent a steroid injection to help her pain, which she tolerated without complication (3F/26). Imaging in June revealed some degenerative disc disease in her cervical spine (13F/85). In July, she continued to complain of pain in her clavicle in her right shoulder and was also attending physical therapy three times weekly (3F/60). She also complained of some swelling in her lower extremities, that she alleged was worse in the end of the day (13F/68). Her examination in August revealed she was in no acute distress and some improvement in her range of motion. She had no impingement signs and had no tenderness to palpation. The claimant had intact strength and sensation to light touch in her right upper extremity. She also was told to complete a course of physical therapy and was referred out for her neck pain complaints (3F/95). She completed her course of physical therapy regarding her cervical spine complaints. She was advised to return to her normal daily activities. She demonstrated normal strength and showed some improvement in her right shoulder range of motion. She had no impingement signs and had normal sensation to sensation in her bilateral upper extremities (13F/58). In April 2019, at a follow-up appointment the claimant demonstrated a normal gait and station and she also had no tenderness to palpation or pain in her abdomen. She also denied back pain, gout, or joint pain. She did have some ongoing abdominal pain complaints, however, along with bloating that prompted a referral for an EGD (5F/3). Her EGD revealed no acute issues in her gastrointestinal tract and she was told to continue her medications (10F/10). In May, the claimant still complained of right shoulder pain and demonstrated reduced range of motion as compared to a previous examination and was encouraged to return to self-directed physical therapy…

In July 2019, the claimant stated at a follow-up that she had no concerns except some increased stress. Furthermore, the claimant had normal extremities with normal range of motion with no paraspinal tenderness (11F/8-16). In September, the claimant's diabetic retinopathy was noted to be stable. She was also receiving yearly injections for her retinopathy (15F/80; 21F/1). In November 2019, the claimant's retinopathy was noted to be stable, but it was noted she had reduced ability to see and it was recommended not drive at night or in low light conditions (15F/56). It was noted the claimant's blood sugars were improved with Januvia in January 2020, and she was told to continue on the medication (15F/50). Then, in May 2020, the claimant sought treatment for plantar fasciitis. She stated her foot pain was 7 out of 10 in severity and she also stated

she had purchased arch supports and was taking pain medication. She was still able to ambulate. She had some tenderness to palpation along with some tingling and diminished vibration sensation. It was recommended she undertake stretching exercises and to wear arch supports. She was also given some felt pads (14F). The claimant reported later in 2020, she was able to walk barefoot at home and used over-the-counter pain medication and arch supports. She continued to complain of moderate pain but was ambulatory and had tenderness to palpation in her feet. She was told not to walk barefoot at home and continue using her arch supports and medication (19F). Her foot complaints did not appear until much later in the record. As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent. For instance, her records do contain abdominal pain complaints and gastrointestinal issues in the early part of the relevant period, but these decrease over time indicating stabilization of her symptoms (4F/34). Similarly, the claimant's blood sugars were not well controlled in the early parts of the record, but by 2020, it was noted medication was keeping her blood sugars under control (15F/50). The claimant also did have some bilateral shoulder and neck pain complaints, but her providers recommended only conservative treatment (3F/95). She also maintained normal strength and range of motion for multiple appointments (3F/95 and 13F/58). The claimant also demonstrated a negative straight leg raise test, normal reflexes, and normal sensation to light touch in her upper and lower extremities (3F/95; 9F and 13F/58). She also had few complaints of plantar fasciitis in the record in 2020, and it was noted that despite her pain complaints, she was still able to ambulate (14F and 19F). Her shoulder and general pain complaints also appear to have stabilized, as her complaints decreased as time went on. The claimant also had few mental health complaints in the record and reported her therapy was helpful (11F/33).

AR 21-23.

The ALJ appropriately discounted Plaintiff's symptoms testimony by highlighting the differences between visit reports and Plaintiff's alleged symptoms. For instance, the ALJ points to relatively normal examination findings in relation to Plaintiff's alleged musculoskeletal pain. *See* AR 613 (August 2018 visit report noting "There is no specific area of tenderness to palpation about the right shoulder. The right shoulder has no impingement signs. Ligamentous examination of both shoulders is unremarkable. Both arms have no deformities. The skin is intact. There is no tenderness to palpation. Both elbows have full painless range of motion. Both forearms have no deformities. The skin is intact. There is no tenderness to palpation."); 745 (April 2019 report noting normal

musculoskeletal findings as to gait/station, digits/nails, and back).  Additionally, the ALJ cites normal gastrointestinal findings to contrast them with Plaintiff's more extreme symptoms testimony regarding her gastrointestinal issues.  *See* AR 502-03 (August 2017 report noting normal gastrointestinal/abdomen findings); 776 (May 2019 EGD evaluation report including normal gastrointestinal and abdomen findings).  The ALJ therefore appropriately examined the medical evidence as one aspect in discounting Plaintiff's symptoms testimony.

Defendant argues that the ALJ also properly used evidence of effective medical treatment to undermine Plaintiff's symptoms testimony.  (Doc. 17 at 6-8.)  An ALJ is permitted to consider evidence of conservative treatment in evaluating a claimant's subjective complaints.  *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding evidence of conservative treatment sufficient to discount claimant's testimony regarding severity of impairment); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling."); *see also* 20 C.F.R. § 404.1529(c)(3)(iv), (v) (medication effectiveness and treatment history are relevant factors for evaluating a claimant's symptom testimony).  Yet, "the fact that treatment may be routine or conservative is not a basis for finding subjective symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes are available." *Block v. Berryhill*, No. 2:16-cv-2230-EFB, 2018 WL 1567814 at *5 (E.D. Cal. Mar. 31, 2018), quoting *Moon v. Colvin*, 139 F.Supp.3d 1211, 1220 (D. Or. 2015); *see also Wheeler v. Kijakazi*, No. 1:21-cv-1225 JLT-BAM, 2023 WL 4146215, at *4 (E.D. Cal. June 23, 2023).

Here, the ALJ broadly notes that:

> Similarly, the claimant's blood sugars were not well controlled in the early parts of the record, but by 2020, it was noted medication was keeping her blood sugars under control (15F/50). The claimant also did have some bilateral shoulder and neck pain complaints, but her providers recommended only conservative treatment (3F/95). She also maintained normal strength and range of motion for multiple appointments (3F/95 and 13F/58). The claimant also demonstrated a negative straight leg raise test, normal reflexes, and normal sensation to light touch in her upper and lower extremities (3F/95; 9F and 13F/58). She also had few complaints of plantar fasciitis in the record in 2020, and it was noted that despite her pain complaints, she was still able to ambulate (14F and 19F). Her shoulder and general pain complaints also appear to have stabilized, as her complaints decreased as time went on.

The claimant also had few mental health complaints in the record and reported her therapy was helpful (11F/33).

AR 23.  The ALJ does not expressly state that Plaintiff's treatments were a factor in discounting Plaintiff's symptoms testimony but discusses some of Plaintiff's treatment in the decision.  AR 20-23.

The ALJ did not properly utilize conservative or effective treatment as a basis for discounting Plaintiff's symptoms testimony. As a preliminary matter, the ALJ does not discuss the more aggressive treatment options that would be available to Plaintiff.  *Block*, 2018 WL 1567814 at *5.  Additionally, it is unclear from the record that the treatment was effective or conservative.  The ALJ stated that Plaintiff's "blood sugars were not well controlled in the early parts of the record, but by 2020, it was noted medication was keeping her blood sugars under control."  AR 23.  However, the portion of the record cited by the ALJ does not show that the cited treatment was consistently effective.  *See* AR 1027-28 (January 2020 visit report noting that for Plaintiff's "Uncontrolled type 1 diabetes mellitus with stage 1 chronic kidney disease," "HgA 1 C has improved… Some lows" and that for Plaintiff's insulin resistance, "Januvia has improved HgA 1 C, now some lows.").  The ALJ also states that Plaintiff was only recommended "conservative treatment" for her bilateral shoulder and neck pain complaints but does not clarify what other treatment options were available or why Plaintiff's treatment qualified as "conservative" from the supporting record citation.  AR 23; 612 (August 2018 progress note stating "The patient is to continue doing her range of motion exercises. The patient is most stiff in internal rotation. She is to complete her course of physical therapy. As far as the cervical spine is concerned, she is to continue follow-up with Dr. Bybee. The patient is to go about her activities as tolerated. She will follow up on a p.r.n. basis.").  Effective control or conservative treatment was therefore not a proper basis for discounting Plaintiff's symptoms testimony.

As the ALJ failed to utilize or articulate proper bases for evaluating Plaintiff's symptoms testimony, the ALJ erred in assessing Plaintiff's symptoms.

**B. Remedy**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion.  *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Unless "the record has been fully developed and further administrative proceedings would

serve no useful purpose," remand for further proceedings is warranted. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).  As it is not clear that "further administrative proceedings would serve no useful purpose," remand for further proceedings is appropriate.  *Id.*; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted).  On remand, the ALJ should specifically address Plaintiff's symptoms testimony.

Having found that remand is warranted, the Court declines to address Plaintiff's remaining argument that the ALJ failed to appropriately evaluate lay witness testimony.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F.Supp.2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."); *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990) ("Because we remand for reconsideration of step three, we do not reach the other arguments raised.").

///

///

///

///

///

///

///

///

///

///

///

///

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole and is not based on proper legal standards.  Accordingly, IT IS HEREBY ORDERED as follows:

1.   Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is GRANTED;

2.   The agency's determination to deny benefits is REVERSED; and

3.   The Clerk of this Court is directed to enter judgment in favor of Plaintiff Sherri Lynn Meadows and against Defendant Leland Dudek, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **May 27, 2025**                    /s/ Barbara A. McAuliffe
                                             UNITED STATES MAGISTRATE JUDGE

12